CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 1 4 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

IRA W. MADISON,
   Plaintiff,

v.

SGT. KILBOURNE, et al.,
   Defendant(s).

Civil Action No. 7:04-cv-00639

**MEMORANDUM OPINION**

By: Hon. James C. Turk
Senior United States District Judge

    Plaintiff Ira Madison, a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. §1983, with jurisdiction vested under 28 U.S.C. §1343. In his complaint, Madison alleges that on August 20, 2004, prison officials at Red Onion State Prison (ROSP) violated his constitutional rights by placing him in four-point, ambulatory restraints for fourteen hours, during which time they also deprived him of his Common Fare diet meals, recreation and shower opportunities, and scheduled doses of his anti-seizure medication. Madison seeks monetary damages and invokes his right to a jury trial. The defendants have filed motions to dismiss, arguing that Madison failed to exhaust administrative remedies before filing this lawsuit, as required under 42 U.S.C. § 1997e(a). Defendant Moore has also filed a motion for summary judgment addressing the merits of the claims against her. Plaintiff has responded to all defendants' motions, making the matter ripe for the court's consideration. Upon review of the record, the court concludes that the motions to dismiss must be denied, but that Nurse Moore's motion for summary judgment must be granted.

I.

    Madison bases his claims on the following alleged events. On August 20, 2004, he was housed in B1 pod, cell 125 at ROSP. At about 8:45 a.m., the sprinkler in his cell malfunctioned and began to flood his cell and other portions of the pod. Madison tried to protect his personal property from the shower of water. About twenty or thirty minutes later, Sgt. Kilbourne, the B1 Security Supervisor, told Madison, "We're going to beat your ass. Please don't cuff up." Madison nevertheless knelt on the floor to be shackled and did not resist officers' efforts to restrain him.

1

After a strip search, officers took Madison, clad only in his boxer shorts, to a stripped cell and left him for fourteen hours, restrained in handcuffs and shackles that were connected by a link chain of eight to ten inches in length. Because of the short chain, Madison had to remain with his back bent nearly to a ninety-degree angle, causing him to suffer severe back spasms. He was unable to use the bathroom, get a drink of water, or find a comfortable position. The restraints chafed his wrists and ankles, leaving permanent scars. In his wet shorts, he was uncomfortably cold in the air-conditioned cell. Officers did not release him to use the bathroom or to eat lunch or dinner. These conditions forced him to urinate on himself and become dehydrated. Officers Comer and Hall refused to give Madison his Common Fare diet meals. Sgt. Kilbourne and Officer Mullins refused to give Madison a break to eat or use the bathroom; mocking him, they ate his lunch. Officers Pelfrey and Williams refused to give Madison his dinner meal.

Just before dinner, Nurse Moore came to the cell block to distribute inmates' prescription medication. Sgt. Kilbourne refused to release Madison from the restraints in the afternoon so he could take his scheduled dose of anti-seizure medication. Around 7:00 p.m., Madison began to feel dizzy and light headed. He told Sgt. Kilbourne that he felt ill, but Kilbourne refused to release him from the restraints. Madison later told a floor officer that he felt ill, and that officer notified the control booth officer that Madison had not received his medication. At some point after speaking to Kilbourne, Madison believes, he "passed out and experienced a fit of seizures" because he does not recall anything until he was put on the cell floor, semi-conscious, still in the restraints and surrounded by a group of officers. When officers released Madison from the restraints around midnight, his arms, fingers, and lower legs were "swollen, sensitive and without feeling" and he was unable to stand straight, walk, or use his hands.

Madison sues Sgt. Kilbourne; Officers Comer, Hall, Mullins, Baker, Williams, and Pelfrey; Major Fleming, Captain Kiser, Investigator Yates, Chief Warden D. A. Braxton, Associate Warden Armentrout, and Nurse Moore. He claims that defendants' actions interfered with his ability to practice his religious beliefs; subjected him to cruel and unusual punishment by depriving him of

2

Case 7:04-cv-00639-JCT-mfu   Document 58   Filed 12/14/05   Page 2 of 6   Pageid#: 299

food, placing and holding him in the restraints under such uncomfortable conditions; deprived him of recreation and shower privileges; denied him his medication; and deprived him of a protected liberty interest without due process. He seeks monetary damages against the defendants in an unspecified amount.

II.

Defendants have filed motions to dismiss on the ground that Madison did not exhaust available administrative remedies as required under 42 U.S.C. § 1997e(a) before filing this lawsuit in November 2004. Inasmuch as defendants have submitted evidence outside the record in support of their motions to dismiss, the court must apply the summary judgment standard. See Fed. R. Civ. P. 12(b) and 56. Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The court must view the facts, and the reasonable inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Summary judgment appropriately lies for the movant only if there can be but one reasonable conclusion drawn from the evidence, against the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Detailed factual allegations in a verified, pro se complaint may be sufficient to withstand a motion for summary judgment with supporting affidavits containing a conflicting version of the facts. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979).

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA") in an attempt to reduce the number of frivolous civil rights cases filed by prisoners. In the PLRA, Congress amended 42 U.S.C. § 1997e, the provision relating to prisoners' exhaustion of administrative remedies. This section requires that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

A plaintiff's failure to exhaust administrative remedies under § 1997e(a) before filing the lawsuit is an affirmative defense that must be raised and pled by the defendant. Anderson v. XYZ

3

Correctional Health Services, Inc., 407 F.3d 674, 681 (4th Cir. 2005).

In this case, defendants offer the affidavit of the ROSP grievance coordinator, stating that prison records do not indicate that Madison filed a regular grievance or subsequent appeals regarding the incidents on August 20, 2004. In his verified complaint, Madison asserts that he attempted to pursue administrative remedies, but never received any responses. He states that he filed complaints to several supervisory officers and to the medical department on August 23, 2004. When he did not get any response to these complaints by the regulation-set deadline of September 14, 2004, he submitted a regular grievance, with no response. On September 28, 2004, he submitted a notarized grievance, to no avail, and thereafter, appealed to the regional offices of the Virginia Department of Corrections (VDOC), with no response. He submits a carbon copy of his appeal.

Taking this evidence in the light most favorable to Madison, the court finds a genuine issue of material fact in dispute, regarding whether Madison filed timely complaints, grievances, and appeals concerning the incident on August 20, 2004. Accordingly, the court must deny defendants' motions to dismiss on the ground that plaintiff failed to exhaust administrative remedies.

### III.

Defendant Moore moves for summary judgment on the merits of the claims against her. She submits the following evidence in support of her motion. On August 20, 2004, Madison was taking numerous medications, including Valporic Acid, Minoxidil, Clonidine, Neurontin, HCTZ, Verapamil, Aspirin, and Benazepril.[1] At 7:30 a.m. morning pill pass, Moore intended to give Madison all of these medications. Her notes indicate that she did not do so because Madison was shouting and kicking his door.[2] After officers placed Madison in ambulatory restraints, Moore checked his pulse at about 9:30 a.m. and verified that he had not suffered any injury. Moore did evening pill pass from about 3:16 to 3:58 p.m. Her notes indicate that she did not issue medication

---

[1] Some of these medications are for hypertension and epilepsy or seizures.

[2] Madison's complaint did not expressly raise a claim that Moore denied him medication at morning pill pass. He raised such a claim, however, in his response to Moore's motion for summary judgment, which the court must liberally construe as a motion to amend the complaint.

4

to Madison because of his refusal. Around 8:30 p.m., officers brought Madison in ambulatory restraints to the medical unit after he complained of suffering a possible seizure. Nurse Lola Holsapple examined him, and documented that his eyes were wide, his pupils were equal and responsive to light, he responded to ammonia inhalant, stimuli, smell and touch, and appeared to be oriented to place and time. Based on these findings, Kaveh Ofogh, M.D., opines that in his medical judgment, Madison did not suffer a seizure between 7:00 and 8:30 p.m. as Madison alleges. Nurse Holsapple gave Madison the medications that he had not received at evening pill pass and released him to security officers. When officers released Madison from ambulatory restraints around midnight, he refused medical assessment.

Deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain proscribed by the Eighth Amendment, Estelle v. Gamble, 429 U.S. 97 (1976), but questions of medical judgment are not subject to judicial review. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. At the summary judgment stage, plaintiff "must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden" of proving the elements of his claim. Id. at 256-57.

Madison's medical claim fails because no reasonable fact finder could rule in his favor. Defendants offer Dr. Ofogh's medical opinion that based on the nurse's observations of Madison's condition in the medical unit at 8:30 p.m., Madison did not suffer a seizure between 7:00 and 8:30 p.m. on August 20, 2004. In the face of this evidence, Madison offers merely his own allegation that after missing two doses of his medication in twelve hours, he lost consciousness for a brief period and ended up on the floor, not remembering how he got there. He does not offer any eye witness to the alleged seizure, including himself. He does not offer any medical evidence contradicting Dr. Ofogh's professional assessment that no seizure occurred. Madison's bald conjecture that he must have had a seizure is not sufficient to withstand defendants' very specific evidence to the contrary.

5

As no reasonable fact finder could find from the evidence that Nurse Moore's actions at morning or evening pill pass on August 20, 2004, caused Madison any specific harm,[3] Madison fails to present any genuine issue of material fact in dispute so as to preclude summary judgment. <u>Estelle</u>, 429 U.S. at 256-57. As such, Moore is entitled to summary judgment as a matter of law. An appropriate order shall be issued this day.

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This __14th__ day of December, 2005.

                                                                /s/ James C. Turk
                                                        Senior United States District Judge

---

[3] As Madison received all the evening pill pass medications at 8:30 p.m., he was not denied the afternoon doses, but merely received them five hours later than usual. Other than the alleged seizure, he does not allege that missing his morning doses and receiving his afternoon doses late caused him any harm whatsoever.