CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

JUL 18 2006

JOHN F. CORCORAN, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| IRA W. MADISON,<br>    Plaintiff, | Civil Action No. 7:04-cv-00639 |
| v. | **MEMORANDUM OPINION** |
| SGT. KILBOURNE, et al.,<br>    Defendant(s). | By: Hon. James C. Turk<br>Senior United States District Judge |

Plaintiff Ira Madison, a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. §1983, with jurisdiction vested under 28 U.S.C. §1343. In his complaint, Madison alleges that on August 20, 2004, the defendant prison officials placed him in ambulatory restraints for fourteen hours under cruel conditions without due process, denied him his religious diet for two meals, and denied him important medication as punishment for something he did not do.[1] He also alleges that defendants retaliated against him for the incident by threatening him and depriving him of showers and recreation opportunities. The defendants have filed a motion for summary judgment and plaintiff responded, making the matter ripe for the court's consideration. Upon review of the record, including an audio tape and a video tape that plaintiff submitted in support of his response, the court concludes that defendants are entitled to summary judgment as a matter of law.

### I.

Madison alleged the following sequence of facts from which his claims arise. On August 20, 2004, Madison was housed in the segregation unit at Red Onion State Prison (ROSP). At 8:45 a.m., while the officers were taking other inmates out of their cells for recreation, the sprinkler head in Madison's cell "malfunctioned" and began flooding the cell with water. After seeing the water, Sgt. Kilbourne told Madison, "We're going to beat your ass. Please don't cuff up. I'm coming in." Madison complied fully with the officers' commands to undergo a strip search, change into dry

---

[1] The court previously granted summary judgment for Nurse Moore on Madison's claim that she acted with deliberate indifference to his serious medical needs when she failed to provide him with his prescribed medications at the scheduled times on August 20, 2004.

1

boxer shorts, back up to be handcuffed, and kneel to be shackled.

With Madison "soaking wet," the officers placed him in a different cell and applied ambulatory restraints. Madison describes this form of restraint as consisting of a waist chain connecting the inmate's shackles and his front-cuffed hands, which were separated by a black box. In his complaint, Madison claimed that on August 20, 2004, the officers made the chain so short ("8-10 inches in length") that it forced him to bend over in "close to a 90-degree angle." In a later pleading, he admitted that he could stretch to a full standing position, but only by causing great pain to his chest and shoulder muscles and causing the cuffs and shackles to dig painfully into his skin. The air conditioning, combined with his wet skin, caused him to suffer severe back cramps and spasms and chafed skin on his wrists and ankles, causing permanent scars. If he tried to move around the cell, the cuffs or the shackles cut into his skin or knocked against bone. Officers left Madison in these restraints from 10:00 a.m. until 12:50 a.m. that night (a total of approximately fourteen hours) without a break for eating or using the bathroom. At lunch time, Kilbourne asked Madison if he was mad yet. Madison replied that he was never mad. Kilbourne stated, "You will be." When Madison asked how long he would be in restraints, Kilbourne answered, "Probably until tomorrow, and don't expect to eat for a while." Officers Comer and Hall refused to give Madison his Kosher lunch meal, then taunted him and played with his food tray. Shortly after the lunch hour, Madison asked for a break from the restraints so that he could eat and use the bathroom. Kilbourne laughed and ate Madison's food,[2] asking "Are you mad yet?" Several times between lunch and dinner, Madison repeated his request for a break from restraints to eat and use the bathroom, but officers refused to grant this request. Officers Pelfrey and Williams refused to serve Madison his Kosher dinner meal. Madison also alleges that he suffered a "gastric episode" that caused him to defecate all over himself. He was unable to clean the waste off of himself until after his release late that night.

---

[2]Madison asserts that Kilbourne knew of Madison's need to eat regularly while he was taking his epileptic medication.

When Kilbourne came by his cell at 6:00 or 6:30 p.m., Madison told him that he felt ill. Kilbourne said that he thought Madison was faking in an effort to get released from restraints. Around 7:00 p.m., Madison began feeling dizzy and light-headed. He reported these symptoms to the floor officer. After learning that Madison had missed two doses of his anti-seizure medication, the control booth officer called the medical unit about the complaint. Madison alleges that sometime later, he passed out and had a fit of seizures. He came to, lying full length on his back, on the floor of his cell, still in the restraints, his wrists and ankles "swollen, sensitive and without feeling." Officers attempted to rouse him and called the medical staff, who came and took him to the medical unit. After checking his vital signs and other symptoms, the medical staff allowed officers to return Madison to his cell, where he was placed back on the concrete floor. When he was released from the restraints around midnight, he could not stand straight or use his hands. His boxers and skin were "sticky, stiff and foul smelling with semi-dried urine excrement." Out of embarrassment and humiliation, he refused an offer of medical attention. The next day officers denied him a scheduled shower out of retaliation.

Defendants offer the following evidence. On August 20, 2004, at 6:30 a.m., Madison began hitting the tray slot on his door, repeatedly. Officer Baker went to his cell and ordered him to stop. Madison stated, "Okay," but continued to hit his tray slot. Because Madison was secure in his cell and did not pose an immediate threat to the security of the institution, no disciplinary action was taken at that time. At about 8:40 a.m., Officers Baker and Mullins noticed water coming from under Madison's cell door. Baker went to the door and saw that the sprinkler head in the cell had been broken. Baker reported the incident to Lt. Harrison and Sgt. Kilbourne. The latter officer came to the cell and ordered Madison to comply with cell removal procedures, which he did. Major Fleming then ordered that Madison be placed in cell B-101 in ambulatory restraints. Kilbourne and Harrison carried out this order without further incident. Nurse Moore came to the cell, evaluated Madison, and noted no injuries. Madison was also charged at that point with disobeying a direct order (for failing to stop hitting his tray slot) and destruction of state property (for breaking the sprinkler head

3

in his cell).

Major Fleming describes ambulatory restraints as allowing the inmate to stand completely upright, but limiting his movements. This description is born out by the video tape Madison has offered into evidence, in which Madison is depicted sitting comfortably on his bunk at one point and after his alleged seizure episode, lying full length on the floor and then on the medical unit stretcher. Fleming states that the restraints are such that the inmate may use the toilet, wash himself, feed himself, and walk around. The restraints prevent him from swinging his arms side to side or lifting them overhead. Defendants' documentation indicates that Madison refused his lunch and dinner meals on August 20, 2004. The recreation period scheduled for Madison on that day was cancelled because the inmate was in restraints. While Madison was in ambulatory restraints, officers checked on him every fifteen minutes and logged his behavior at each of those checks. Madison did not inform officers who checked on him that he had defecated on himself, and the log book does not indicate that Madison had this problem at any time while in restraints.

The defendants all state that if Madison had informed them that he had soiled himself, they would have provided him with clean clothes. The officers deny that they ever threatened or verbally harassed Madison or that he ever told them he felt ill and needed his medication. If he had done so, they would have called the medical unit, and Madison could have taken his medication without having the restraints removed. Officers Pelfrey,[3] Hall, Comer, Williams and Mullins state that they do not remember Madison at all and do not remember his being placed in ambulatory restraints on August 20, 2006.

## II.

In his complaint, Madison alleges the following claims for relief:

1. Defendants Kilbourne, Comer, Hall, Mullins, Baker, Williams, and Pelfrey deprived Madison of his right to free exercise of his religious beliefs by denying him two Kosher meals on August 20, 2004, in violation of the First Amendment and the Religious Land Use

---

[3] Madison originally identified this officer as Pelirelli, but he does not dispute defendants' evidence that the officer's proper name is Pelfrey.

4

and Institutionalized Persons Act (RLUIPA). 42 U.S.C. § 2000cc, et. seq.

2. Defendants deprived Madison of two meals on August 20, 2004 in violation of the Eighth Amendment.

3. Kilbourne deprived Madison of necessary medication and food on August 20, 2004, in violation of the Eighth Amendment.

4. Kilbourne inflicted excessive force on Madison by placing him in ambulatory restraints and maintaining him in such restraints for fourteen hours under painful conditions, unable to eat, straighten up, or use the bathroom.

5. Defendants retaliated against Madison by denying him a scheduled shower and recreation period on August 21, 2004.

6. Kilbourne placed Madison in ambulatory restraints on August 20, 2004 without due process.

7. Major Fleming and Capt. Kiser were on notice that officers punished inmates with unjustified restraints, denial of food, showers and recreation, but failed to correct the situation.

8. Investigator Yates, Warden Braxton, Assistant Warden Armentrout, and other officers do not respond to Madison's many complaints and grievances about alleged constitutional violations at ROSP.

## III.

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56. Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Rule 56© mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. Id. Plaintiff "must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of

5

proving the pertinent" issue. Id. at 256-57. Summary judgment appropriately lies for the movant only if there can be but one reasonable conclusion drawn from the evidence, against the non-moving party. Id. at 247-48.

## A. Religious Diet

Inmates clearly retain their First Amendment right to free exercise of religion in prison, O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987), including the right to "receive diets consistent with their religious scruples." Kahane v. Carlson, 527 F.2d 492, 495 (2nd Cir.1975). Prisoners' rights must be balanced, however, against legitimate needs of prison administration as well. Therefore, the constitution obligates prison officials to make reasonable attempts to accommodate inmates' religious dietary needs. Turner v. Safley, 482 U.S. 78 (1987); O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987). Section 3 of RLUIPA prohibits governments from imposing a "substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government demonstrates that imposition of that burden furthers "a compelling governmental interest" by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2).

The record reflects that the defendants are making a reasonable effort to accommodate Madison's religious dietary needs. It is undisputed that prison officials have placed him on the Common Fare diet in keeping with his religious beliefs as part of an agreed order in another civil action and that he was scheduled to receive such meals on August 20, 2004. It is undisputed that he did not eat two of his meals that day, although the parties offer different reasons for this fact. The court cannot find that this dispute is material, however, as Madison does not offer any evidence that missing a meal or two occasionally, for whatever reason, places any substantial burden on his religion. He was not forced to eat foods that are forbidden by his beliefs and does not point to any religious requirement that he eat three meals every day. Accordingly, the court finds that his allegations fail to state any claim under the First Amendment or RLUIPA. His additional allegations that certain officers taunted him and ate his meals in front of him also fail to state any claim of constitutional proportions. See Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991) (finding that guard's

6

verbal harassment or idle threats to an inmate, even if they cause an inmate fear or emotional anxiety, do not violate inmate's constitutional rights). As to Claim 1, the court will grant defendants' motion for summary judgment.

**B. Deprivation of Food and Medication**

The Eighth Amendment protects prisoners from cruel and unusual living conditions. Rhodes v. Chapman, 452 U.S. 337 (1981). To prove such a claim, the inmate must demonstrate that prison officials were deliberately indifferent to a serious risk of harm posed by the challenged condition. Farmer v. Brennan, 511 U.S. 825, 835 (1994). To prove deliberate indifference, plaintiff must show that the official was aware of facts from which he could draw an inference that a substantial risk of harm existed and that he actually drew that inference. Id. at 837. Then, plaintiff must show that the official disregarded the risk by failing to take "reasonable measures" to alleviate the risk. Id. at 832. He must also show that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions. Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993). A prison officials' deliberate indifference to an inmate's serious medical need also states an Eighth Amendment claim. Estelle v. Gamble, 429 U.S. 97 (1976).

Madison claims that deprivation of the two meals and two doses of his medication on August 20, 2004, violated the Eighth Amendment. He claims that he needs to eat his meals regularly because of his anti-seizure medication and that he did not refuse any meals. Madison fails to present any genuine issue of material fact, however, as to any serious or significant physical injury he sustained as a result of missing two meals. Mere hunger for a few hours is not a significant physical injury.[4]

Moreover, the evidence does not support Madison's claim that his lack of food or the lack of medication caused him to pass out or have seizures. The record includes the affidavit of Dr. Ofogh (Dkt. #23). Dr. Ofogh reviewed medical records of the vital signs and other symptoms the

---

[4]See also Waring v. Meachum, 175 F. Supp. 2d 230, 240 (D. Conn. 2001) (missing two religious diet meals during a security lock down did not violate Eighth Amendment).

7

nurse noted after examining Madison at 8:30 p.m. on August 20, 2004, after officers had found him on the floor of his cell. Dr. Ofogh states that in his medical judgment, based on the facts noted during the nurse's evaluation, Madison did not suffer a seizure between 7:00 and 8:30 on that date. Madison offers no affirmative evidence, other than his own vague conclusions and speculation, by which he could prove that missing two meals and his medication caused him to pass out or have a seizure. Thus, he fails to establish the injury element of his conditions claim or the serious need aspect of his medical claim. The court will grant defendants' motion for summary judgment as to Claims 2 and 3.

**C. Ambulatory Restraints**

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" upon a convicted, incarcerated inmate. Whitley v. Albers, 475 U.S. 312, 319 (1986). To prevail in an Eighth Amendment claim regarding use of force, an inmate must prove (1) that the officers "acted with a sufficiently culpable state of mind" (the subjective component) and (2) that "the deprivation suffered or injury inflicted on [him] was sufficiently serious" (the objective component). Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The subjective component requires the inmate to show that the officers applied force not "in a good faith effort to maintain or restore discipline," but rather applied force "maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). In making this determination, the court must balance such factors as the need for the application of force, the relationship between the need and the amount of force actually applied, and the extent of injury inflicted. Id. The objective component requires the inmate to prove that the use of force was more than de minimis or, in the alternative, that it was repugnant to the conscience of mankind. Hudson, 503 U.S. at 9-10. De minimis injury can be conclusive evidence that the force used was also de minimis and, therefore, not violative of constitutional protections. See Norman v. Taylor, 25 F.3d 1259, 1264 (4th Cir. 1994). The Fourth Circuit has defined two types of extraordinary circumstances that give rise to an excessive force claim where plaintiff suffered no lasting injury: when the "force used [is] of a sort repugnant to the

8

conscience of mankind . . . or the pain itself [is] such that it can properly be said to constitute more than de minimis injury." Id. at 1264 n. 4.

The use of four- or five-point restraints to control prison inmates is not *per se* unconstitutional in all circumstances. See Williams, 77 F.3d at 763; Sadler v. Young, 325 F. Supp.2d 689, 702 (W.D. Va. 2004). This court has held, however, that application and/or continued use of five-point restraints on an inmate who does not currently pose any threat to security or discipline can be violative of the Eighth Amendment even when that inmate does not suffer significant physical injuries. Sadler, 325 F. Supp.2d at 704; Davis, 156 F. Supp.2d 588, 594 (W.D. Va. 2001). In Sadler, the inmate plaintiff was strapped down, immobilized, to a bed after officers reported that he had slapped his food tray back out of his food tray slot, spilling food all over an officer; he was also verbally abusive. 325 F. Supp. 2d at 692. The court found that in the face of this disruptive behavior, no reasonable juror could find that the initial placement of Sadler in four-point restraints constituted wanton infliction of punishment. Id. at 701-02. The court found, however, that the officers did not act in good faith to restore order when they maintained a non-disruptive Sadler in the four-point restraints for two days, releasing him for infrequent, brief intervals to eat or use the toilet. Id. at 702. The court held that the pain Sadler suffered in his arms, legs and chest from remaining immobilized for such a lengthy period of time was more than de minimis and that the two-day restraint of the inmate under such conditions was "repugnant to the conscience of mankind." Id. at 704. Upon so finding, the court granted judgment as a matter of law for the plaintiff on his Eighth Amendment claim. Id.

Madison seeks to jump on the Sadler bandwagon. Admittedly, some similarities exist between the two cases. Like the officers in Sadler, the officers in this case reasonably believed on August 20, 2004, that Madison posed a continuing risk that needed to be controlled. Madison had kicked his door, and although no officer saw him break the sprinkler, officers reasonably believed that he had done so, based on the fact that he alone had been in the cell when the sprinkler head was broken. Thus, the officers reasonably believed that he posed an ongoing risk to himself and to state property. The ambulatory restraints they applied to Madison are designed to prevent the very type

9

of behavior he had been exhibiting; while in the restraints, he could not kick his feet or raise his arms over his head. Accordingly, the court concludes that the initial decision to place Madison in ambulatory restraints was a rational, measured response to the risk that he would continue to be disruptive or destructive. The court will grant the motion for summary judgment as to this aspect of Madison's claims.

At this point, the similarities between Sadler's restraint period and Madison's end. From the video tape that Madison submits, it is clear that even while restrained, Madison could move freely about the cell and sit or lie down comfortably on the bunk. Nothing in the video indicates that the ambulatory restraints he wore would prevent a reasonably creative inmate from using his hands to eat, to take medication, or to lower his boxer shorts to defecate or urinate in the toilet. Thus, even if he could not straighten to his full height without discomfort during the fourteen-hour restraint period, no reasonable juror would find the circumstances of ambulatory restraints to be "repugnant to the conscience of mankind." Moreover, no reasonable juror could find from the evidence that Madison suffered more than de minimis pain or injury. His bald allegations that the cuffs and shackles caused permanent scars are refuted by the absence of evidence that he ever sought medical attention for these purportedly agonizing injuries. Certainly, no such injury is visible in the video footage of the officers removing a prostrate Madison from the cell after his collapse. Thus, the court finds no genuine issue of material fact in dispute as to the objective prong of the Hudson test. The finding of de minimis injury also supports the conclusion that the amount of force represented by the restraints was also de minimis and therefore not excessive. Norman, 25 F.3d at 1264.[5] Thus, Madison's Eighth Amendment claim also fails on the subjective prong of Hudson. The court will grant defendants'

---

[5] The evidence also strongly supports a finding that the officers reasonably believed that continued use of the restraints was necessary to prevent Madison from committing further disruptive behavior. The video tape of the officers initially applying the restraints depicts Madison apparently attempting to justify verbally his door-kicking behaviors as a means of forcing an officer to come and see him. The medical evidence also backs up the officers' apparent belief that Madison's collapse was a faked seizure, an attempt to obtain a release from the restraints for medical reasons.

10

motion for summary judgment as Claim 4.[6]

Furthermore, the evidence does not support any due process claim related to the ambulatory restraints. When a change in an inmate's status or a method of restraint imposes atypical hardship in comparison to the ordinary conditions of prison life, pursuant to prison regulations, those regulations create a liberty interest of which the inmate may not be deprived without due process. Sandin v. Conner, 515 U.S. 472, 484 (1995). The Fourth Circuit has held that inmates have a liberty interest in not being "arbitrarily and capriciously" confined in four-point restraints (strapped down to a bed), although the court has not specified a length of time that triggers protection of that liberty interest. Sadler, 325 F. Supp. 2d at 705, citing Williams, 77 F.3d at 770 n. 10. This court cannot find, however, that the fourteen-hour period in ambulatory restraints in this case worked any major disruption in Madison's environment so as to create a protected liberty interest in avoiding such restraints. While in the ambulatory restraints, Madison could participate, albeit somewhat awkwardly, in a majority of the activities open to him on an ordinary day at Red Onion—eating, sleeping, using the toilet, sitting, and standing. As stated, the evidence does not reflect that the restraints caused more than de minimis pain or discomfort in fourteen hours. Thus, the court cannot find that Madison had any federally protected liberty interest in avoiding ambulatory restraints applied as they were on August 20, 2004. The court will grant defendants' motion for summary judgment as to Claims 4 and 6, alleging Eighth Amendment and Du Process claims related to ambulatory restraints.[7]

**D. Retaliation**

In order to state a retaliation claim, the "plaintiff must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such

---

[6] This court has previously found that extended use of ambulatory restraints of the type used on Madison did not violate the Eighth Amendment. See Teal v. Braxton, Case No. 7:04-cv-00406, 2005 WL 467985 (W.D. Va. 2005) (unpublished); Shelton v. Schilling, Case No. 7:04-cv-00228, 2005 WL 2406094 (W.D. Va. 2005) (unpublished).

[7] Madison does not raise a distinct due process claim regarding the procedures of the disciplinary hearing conducted on the charges he received as a result of his conduct on August 20, 2004. In any event, as he did not lose earned good conduct time as a result of these disciplinary convictions, that hearing did not give rise to any federal due process protections under Sandin.

11

a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Conclusory allegations of retaliation, however, are not sufficient to state an actionable retaliation claim under § 1983. Id. at 74. The plaintiff must allege facts showing that his exercise of a constitutional right was a substantial factor motivating the retaliatory action and that, as a result of the retaliatory action, he suffered some adverse impact to the continued exercise of his constitutional rights. American Civil Liberties Union v. Wicomico County, 999 F.2d 780, 784 (4th Cir. 1993) (change in prison regulations after lawsuit created mere inconvenience in exercise of constitutional rights, so impact not adverse enough to constitute actionable retaliation).

Under these principles, Madison fails to allege facts stating any retaliation claim in relation to the events of August 20-21, 2004. He alleges that the officers retaliated against him because they were upset that they had to clean up the water that spilled into his cell and cell block from the broken sprinkler. These allegations do not reflect that exercise of a constitutional right motivated the officers' challenged conduct or that the conduct itself chilled Madison's exercise of any constitutionally protected right. Thus, they fail to state a § 1983 retaliation claim under Adams. When a plaintiff does not allege facts stating any constitutional claim, a defendant is entitled to summary judgment on the ground of qualified immunity. Saucier v. Katz, 533 U.S. 194, 200-01 (2001). On that ground, the court will grant defendants' motion as to Claim 5 in this case.

### E. Other Claims

In Claim 7, Madison complains that supervisory officers knew that certain officers punished inmates by using improper restraints and depriving them of food, showers and recreation on occasion and failed to take any corrective action. The court has already found that the use of restraints to which Madison refers was not unconstitutional. His allegations also fail to demonstrate that occasional deprivation of a shower or recreation period has caused, or is likely to cause, him any serious physical injury. Thus, he fails to state any Eighth Amendment claim related to the missed showers and recreation. Strickler, 989 F.2d at 1380-1381. As Madison fails to demonstrate that he was deprived of any constitutionally protected right here, he also fails to state any claim that supervisory officials

12

knew of and should have corrected any such problems. Defendants are entitled to summary judgment on the ground of qualified immunity. Saucier, 533 U.S. at 200-01.

Finally, in Claim 8, Madison complains that officials ignored his grievances about alleged constitutional violations. Inmates do not have a constitutionally protected right to a grievance procedure. Adams, 40 F.3d at 75. Accordingly, a prison official's failure to comply with the state's grievance procedure is not actionable under §1983. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Because Madison's allegations about grievances fail to state any constitutional claim, defendants are entitled to summary judgment on the ground of qualified immunity as to Claim 8. Saucier, 533 U.S. at 200-01. An appropriate order shall be issued this day.

## IV.

In conclusion, the court will grant defendants' motion for summary judgment in its entirety. The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This _18th_ day of July, 2006.

/s/ James C. Turk
Senior United States District Judge

13